**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| CHRISTOPHER CARR, ROXANNE CLAYTON, AND BRIAN BENNETT, | )  3:09-CV-0584-ECR-RAM )  (Base Case) )  |
|     Plaintiffs, | ) |
| vs. | )  **Order** ) |
| INTERNATIONAL GAME TECHNOLOGY et al., | ) ) |
|     Defendants. | ) ) |
| _____ | ) |
| RANDOLPH K. JORDAN and KIMBERLY J. JORDAN, | )  3:09-CV-0585-ECR-RAM )  (Member Case) ) |
|     Plaintiffs, | ) |
| vs. | ) ) |
| INTERNATIONAL GAME TECHNOLOGY, et al., | ) ) |
|     Defendants. | ) ) |
| _____ | ) |

Plaintiffs are former employee participants in International Game Technology's ("IGT") profit sharing plan ("Plan") who have brought a class action suit under Federal Rule of Civil Procedure 23 to allege breach of fiduciary duty claims under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2).  The parties have argued the merits of the motions to be considered by the Court at the hearing on March 10, 2011.  The Court has read and considered the moving, opposition and reply documents, along with the parties' supplemental briefs.  Now pending are a motion to dismiss (#40) filed by Defendants IGT, Siciliano and the members of IGT's Board of Directors (the "Director

Defendants"); a motion for summary judgment (#44) filed by
Defendants IGT, Siciliano and the Director Defendants; and an
alternative motion to dismiss (#46) filed by Defendant IGT Profit
Sharing Committee.  The motions are ripe, and we now rule on them.

## I. Factual Background

### A. The Plan

The Plan is a voluntary defined contribution plan whereby
participants make contributions to the Plan and direct the Plan to
purchase investments with those contributions from options pre-
selected by Defendants, which are then allocated to participants'
individual accounts. (Am. Compl. ¶¶ 57-58 (#36).)  As of June 26,
2008, Plan participants could direct their accounts to be invested
in one or more of IGT Stock and twenty-six (26) mutual funds offered
by the Plan as investment options. (Id. ¶ 59.)  Contributions are
held by a Trustee and placed in the Plan's Trust Fund. (D's Memo. at
9 (#41).)  Fidelity Management Trust Company serves as the Trustee
of the Plan. (Am. Compl. ¶ 62. (#36).)  IGT delegated responsibility
for administration of the Plan to a committee (the "Committee"),
whose members are subject to appointment or approval by IGT's Board
of Directors (the "Board"). (Id. ¶ 2.)  The Committee is the named
fiduciary for the Plan. (Id. ¶ 38.)

The parties disagree as to whether the terms of the Plan
mandate that IGT stock be offered as an investment option. (Id. ¶
64; D's Memo. at 10 (#41).)  Section 3.8(a) of the Plan provides
that the "Committee may, in its discretion, terminate any Investment
Fund," while Section 3.8(b) of the Plan states that "[o]ne of the

Investment Funds available shall be the IGT Stock Fund . . . ."
(#36-2 at 43-44.)

### B. IGT Stock Price Decreases

As of the end of Plan year 2007, Plaintiffs assert that the Plan held approximately 2,370,954 shares of IGT stock, valued at a market price of over $104,156,009. (Am. Compl. ¶67.)  By the end of Plan year 2008, the amount of shares of IGT stock held by the Plan increased to 2,878,778, while the market value of such shares decreased to $34,228,670, representing a decrease of 67%. (Id.)

Plaintiffs define the "Class Period" as November 1, 2007 - April 23, 2009. (Id. ¶ 3.)  Plaintiffs allege that during the Class Period, Defendants either were or should have been aware that IGT's stock was artificially inflated as a result of inaccurate public statements by IGT.

## II. Procedural Background

On October 2, 2009, individual Plaintiffs Roxanne Clayton, Brian Bennett and Christopher Carr filed a "Class Action Complaint for Violations of the Employee Retirement Income Security Act" (#1) against Defendants.  Summons was issued as to Defendants on October 5, 2009 (#3), and a Waiver of Service by each Defendant was filed on November 20, 2009 (##10-20).  On February 8, 2010, the Court issued an order (#33) consolidating all related actions and appointing Plaintiffs Randolph K. Jordan, Kimberly J. Jordan, Christopher Carr, Roxanne Clayton and Brian Bennett as interim lead Plaintiffs.  On March 10, 2010, Plaintiffs filed an amended complaint "Consolidated

Class Action Complaint for Violations of the Employee Retirement Income Security Act" (#36).

On April 9, 2010, individual Defendants and Defendant IGT filed a "Motion to Dismiss Consolidated Class Action Complaint and Request for Hearing" (#40) (the "First MTD") and accompanying memorandum (#41), and on May 10, 2010, Plaintiffs filed their response (#54) to such motion.  Defendants filed their reply (#65) on June 8, 2010.

Also on April 9, 2010, individual Defendants and Defendant IGT filed an "Alternative Motion by Defendants for Summary Judgment on Claims of Named Plaintiffs" (#44) (the "MSJ"), and on April 30, 2010, Plaintiffs filed their response (#49) to such motion. Defendants filed their reply (#64) on May 14, 2010.

In addition, on April 9, 2010, Defendant IGT Profit Sharing Committee filed "Defendant IGT Profit Sharing Plan Committee's Alternative Motion to Dismiss" (#46) (the "Alternative MTD"), and on May 10, 2010, Plaintiffs filed their response (#55) to such motion.

### III. Motion to Dismiss Standard

Courts engage in a two-step analysis in ruling on a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  First, courts accept only non-conclusory allegations as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  Federal Rule of Civil Procedure 8 "does not unlock the doors of

4

discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.  The Court must draw all reasonable inferences in favor of the plaintiff.  See Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 949 (9th Cir. 2009).

After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint "states a plausible claim for relief." Iqbal, 129 S. Ct. at 1949. (citing Twombly, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability...'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

**IV. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the

5

1  moving party is entitled to judgment as a matter of law.  FED. R.

2  CIV. P. 56(c).  Judgment as a matter of law is appropriate where

3  there is no legally sufficient evidentiary basis for a reasonable

4  jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where

5  reasonable minds could differ on the material facts at issue,

6  however, summary judgment should not be granted.  See Warren v. City

7  of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116

8  S.Ct. 1261 (1996).

9      The moving party bears the burden of informing the court of the

10  basis for its motion, together with evidence demonstrating the

11  absence of any genuine issue of material fact.  Celotex Corp. v.

12  Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met

13  its burden, the party opposing the motion may not rest upon mere

14  allegations or denials in the pleadings, but must set forth specific

15  facts showing that there exists a genuine issue for trial.  Anderson

16  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the

17  parties may submit evidence in an inadmissible form — namely,

18  depositions, admissions, interrogatory answers, and affidavits —

19  only evidence which might be admissible at trial may be considered

20  by a trial court in ruling on a motion for summary judgment.  FED.

21  R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d

22  1179, 1181 (9th Cir. 1988).

23      In deciding whether to grant summary judgment, a court must

24  take three necessary steps: (1) it must determine whether a fact is

25  material; (2) it must determine whether there exists a genuine issue

26  for the trier of fact, as determined by the documents submitted to

27  the court; and (3) it must consider that evidence in light of the

28

6

appropriate standard of proof.  <u>Celotex</u>, 477 U.S. at 317.  Summary
judgment is not proper if material factual issues exist for trial.
<u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir.
1999).  "As to materiality...only disputes over facts that might
affect the outcome of the suit under the governing law will properly
preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248.
Disputes over irrelevant or unnecessary facts should not be
considered.  <u>Id.</u>  Where there is a complete failure of proof on an
essential element of the nonmoving party's case, all other facts
become immaterial, and the moving party is entitled to judgment as a
matter of law.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is not a
disfavored procedural shortcut, but rather an integral part of the
federal rules as a whole.  <u>Id.</u>

**V. Discussion**

A. Defendants' Motion to Dismiss (#40)

The First MTD moves to dismiss the amended complaint (#36) on
the grounds that the allegations fail to state a claim under ERISA.
Specifically, Defendants make four claims in their accompanying
memorandum (#41): (i) Plaintiffs' prudence claim fails as a matter
of law; (ii) Plaintiffs do not state a claim based on false and
misleading statements; (iii) Plaintiffs do not state a claim for
failure to monitor; and (iv) Plaintiffs do not state a claim for co-
fiduciary liability.

i. Defendants' Fiduciary Status

7

Defendants allege that neither IGT, the Board, nor Defendant Siciliano exercised a fiduciary function with respect to the Plan's investment in IGT stock.

We find that the members of the Board were *de facto* fiduciaries with respect to the Board's authority to appoint, retain or remove members of the Committee; that Mr. Siciliano was not a fiduciary with respect to the Plan; that the Committee was a named and a *de facto* fiduciary with respect to the Plan; and that IGT was a *de facto* fiduciary with respect to (i) its communications regarding the Plan and (ii) its authority to appoint and remove the Plan Trustee.[1]

ERISA expressly limits liability for fiduciary breach to ERISA fiduciaries. <u>Wright v. Or. Metallurgical Corp.</u>, 360 F.3d 1090, 1102 (9th Cir. 2004); <u>Gelardi v. Pertec Computer Corp.</u>, 761 F.2d 1323, 1324-25 (9th Cir. 1985). To qualify as an ERISA fiduciary, an individual or entity must either (i) be named or designated as a fiduciary under the terms of an ERISA plan pursuant to 29 U.S.C. § 1102(a); or (ii) act as a "functional" or "de facto" fiduciary with respect to an ERISA plan by exercising discretionary control over the management or administration of the plan or its assets pursuant to 29 U.S.C. § 1002(21)(A). ERISA fiduciaries may be held liable as such only "to the extent" that they exercise discretionary control over the management or administration of a plan or its assets. <u>See</u> 29 U.S.C. § 1002(21)(A); <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225-26 (2000). The question of whether a person qualifies as a functional or *de facto* fiduciary under ERISA "is fact intensive and the court

---

[1] The Plan Trustee was a named fiduciary with respect to the Plan.

must accept well-pled allegations as true when ruling on a motion to dismiss." <u>In re Xerox Corp. ERISA Litig.</u>, 483 F. Supp. 2d 206, 213 (2007). A defendant's fiduciary status under ERISA may be decided on a motion to dismiss. <u>See</u> <u>Wright</u>, 360 F.3d at 1101-02.

a. IGT

Plaintiffs contend that Defendant IGT was both a named and *de facto* fiduciary of the Plan (i) by acting through the Committee to disseminate information regarding the Plan; (ii) by virtue of its ability to appoint, monitor and remove the Trustee of the Plan; and (iii) through the acts of its employees who performed fiduciary functions with respect to the Plan under the doctrine of *respondeat superior*. (Am. Compl. ¶¶ 76-80 (#36).)

**Acting through the Committee**

ERISA requires that the plan administrator furnish each participant covered under the plan and each beneficiary under the plan with a summary plan description. 29 U.S.C. § 1101(a)(1). Plaintiffs allege that IGT exercised responsibility through the Committee for communicating with participants regarding the Plan as required by ERISA. (Am. Compl. ¶ 76 (#36).) Plaintiffs assert that IGT and the Committee disseminated the Plan's documents and related materials, which incorporated by reference materials such as IGT's inaccurate Securities and Exchange Commission ("SEC") filings, which converted such materials into fiduciary communications. (<u>Id.</u> ¶¶ 76, 87.) Plaintiffs further allege that IGT made misleading communications to Plan participants through press releases and other communications with analysts and the press. (<u>Id.</u> ¶¶ 91-97, 103-106, 108-114, 119-121, 135-137, 143.)

9

Defendants correctly state that, in general, SEC filings are made in defendants' corporate, rather than fiduciary, capacity. See, e.g., Harris v. Amgen, 2010 U.S. Dist. LEXIS 26283 at *41 (C.D. Cal. Mar. 2, 2010); In re Citigroup ERISA Litig., 2009 U.S. Dist. LEXIS 78055 at *72 (S.D.N.Y. Aug. 31, 2009). In Citigroup, for example, the Court found that the defendants alleged to have made false statements on the SEC filings were not ERISA fiduciaries subject to a duty to communicate truthfully with plan participants. Likewise, Defendants rely on Quan for the proposition that SEC filings are made in a defendant's corporate capacity even when incorporated into plan documents. Quan v. Computer Scis. Corp., 623 F.3d 870 (9th Cir. 2010) We disagree. The Quan court merely held that plaintiffs in that case "had not generated any genuine issues of material fact that the alleged misrepresentations and nondisclosures at issue were material," and did not hold that SEC filings are not fiduciary communications when incorporated into plan documents by ERISA fiduciaries. Id. at 877.

The United States Supreme Court, however, has held that ERISA liability may be implicated if a defendant intentionally connects its statements about the company's financial health to statements it makes about the future of plan benefits. See Varity v. Howe, 516 U.S. 489, 504 (1996). This indicates that those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts. The Ninth Circuit Court of Appeals has recognized, however, that the act of incorporating SEC filings into plan communications may give rise to ERISA liability. Quan, 623 F.3d at 886 (9th Cir. 2010) ("We assume, without deciding, that alleged misrepresentations in

SEC disclosures that were incorporated into communications about an ERISA plan are 'fiduciary communications' on which an ERISA misrepresentation claim can be based."). <u>See also</u> <u>In re Computer Scis. Corp. ERISA Litig.</u>, 635 F. Supp. 2d 1128, 1140-1141 (C.D. Cal. 2009).

Here, the Plan's Prospectus and Summary Plan Description, dated October 13, 2000 ("SPD") lists IGT as the Plan sponsor and administrator, and notes that IGT has delegated responsibility for Plan administration to the Committee. (Am. Compl. ¶ 2 (#36).)  The SPD incorporates IGT's SEC filings by reference, and specifically, those filed after the date of the SPD. (<u>Id.</u> ¶ 66.)  As such, we find that Plaintiffs have alleged facts sufficient to establish, at the pleadings stage, that IGT is a *de facto* fiduciary under ERISA with respect to communications regarding the Plan.

### Ability to Appoint, Monitor and Remove

Case law under ERISA indicates that the power to appoint and remove an ERISA fiduciary gives rise to a duty to monitor and results in the appointing and removing party being a *de facto* fiduciary with respect to such appointment, monitoring and removal. <u>See, e.g.</u>, <u>In re Elec. Data Sys. Corp. "ERISA" Litig.</u>, 305 F. Supp. 2d 658, 670 (E.D. Tex. 2004).

As such, IGT is a *de facto* fiduciary with respect to the appointment, monitoring and removal of the Trustee of the Plan. However, Plaintiffs do not allege that IGT breached its fiduciary duty in selecting, retaining or monitoring the Trustee.

Therefore, this is not a basis on which the Court will find that IGT is a fiduciary.

1

### Respondeat Superior

2      For purposes of ERISA, "an employer may wear 'two hats' as both

3 a corporate employer and a plan fiduciary." <u>In re Morgan Stanley</u>

4 <u>ERISA Litig.</u>, 696 F. Supp. 2d 345, 355 (quoting <u>Amato v. Western</u>

5 <u>Union Intern., Inc.</u>, 773 F.2d 1402, 1416 (2d Cir. 1985)).  However,

6 an employer is not immediately considered a plan fiduciary merely

7 because one or more of its employees function as such. <u>Id.</u> <u>See also</u>

8 <u>In re Williams Cos. ERISA Litig.</u>, 271 F. Supp. 2d 1328, 1338 (N.D.

9 Okla. 2003).  Here, fiduciary responsibility on the part of IGT

10 based on a *respondeat superior* theory is not established.  <u>In re</u>

11 <u>Morgan Stanley ERISA Litig.</u>, 696 F. Supp. 2d at 355-356.  The Ninth

12 Circuit has found that a theory of *respondeat superior* in ERISA

13 cases is inconsistent with the core principle of ERISA that

14 "employees will serve on fiduciary committees but [that] the statute

15 imposes liability on the employer only when and to the extent that

16 the employer [itself] exercises the fiduciary responsibility

17 allegedly breached." <u>Gelardi</u>, 761 F.2d at 1325.  <u>See also</u> <u>Tool v.</u>

18 <u>Nat. Employee Benefit Servs., Inc.</u>, 957 F. Supp. 1114, 1121 (N.D.

19 Cal. 1996).

20            <u>b. Members of the Board</u>

21      Plaintiffs assert that the Director Defendants are *de facto*

22 fiduciaries on the grounds that (i) the Director Defendants

23 exercised discretionary authority with respect to the appointment of

24 the Plan fiduciaries, as the Board had the power under the Plan to

25 appoint, retain or remove members of the Committee (Am. Compl. ¶¶

26 25-34, 36, 37); and (ii) the Plan provides that the Committee should

27 keep the Board apprised of the investment results of the Plan and

28

report any other information necessary to fully inform the Board of the status and operation of the Plan (Id. ¶ 37).

For purposes of ERISA, directors are only fiduciaries to the extent that they perform the functions of a fiduciary.  IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1419 (9th Cir. 1997) ("Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries"); 29 C.F.R. § 2509.75-8, D-4 ("Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act").

We are persuaded that where a corporation's board of directors is charged with reviewing and evaluating reports from a committee charged with administering an ERISA plan, such powers of general oversight are insufficient to establish the board's fiduciary status, even when coupled with other powers, such as that to modify the plan and to decide whether to make matching contributions under the plan. In re Uniphase Corp. ERISA Litig., 2005 U.S. Dist. LEXIS 17503 at *10 (N.D. Cal. July 13, 2005).  Possession of such powers of general oversight is insufficient to establish that the board exercises discretionary authority over the management of the plan. Rather, the directors of a company are only fiduciaries for ERISA purposes to the extent that they exercise discretionary authority with respect to the particular activity at issue.

Where a board of directors has a power to appoint, retain or remove members of a committee acting as named fiduciary under a plan, such power will give rise to a duty to monitor that committee

13

under ERISA. <u>See, e.g.</u>, <u>In re Computer Scis. Corp. Erisa Litig.</u>, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009). The board of directors' obligations can extend only to this duty to monitor and not to acts such as controlling investment options or communicating with plan participants. <u>Crowley v. Corning, Inc.</u>, 234 F. Supp. 2d 222 (W.D.N.Y. 2002). Here, the parties do not contest that the Board had the authority to appoint, retain or remove members of the Committee. As discussed above, this authority will give rise to a duty to monitor the members of the Committee.

Therefore, the Court finds that the Director Defendants are *de facto* ERISA fiduciaries, and may be held liable under ERISA for a failure to monitor the Committee members. <u>See</u> <u>Gelardi v. Pertec Computer Corp.</u>, 761 F.2d 1323, 1324 (9th Cir. 1985); <u>Crowley</u>, 234 F. Supp. 2d at 229; <u>Indep. Ass'n of Publishers' Employees, Inc. v. Dow Jones & Company, Inc.</u>, 671 F. Supp. 1365, 1367 (S.D.N.Y. 1987).

### c. The Committee

The parties do not dispute that the Committee is a named fiduciary of the Plan. In addition, Plaintiff alleges (Am. Compl. ¶¶ 83-84), and Defendants do not contest, that the Committee is a de facto fiduciary with respect to the Plan.

### d. Mr. Siciliano

Plaintiffs allege that Defendant Mr. Siciliano was IGT's Interim Principal Financial Officer, Chief Accounting Officer and Treasurer during the Class Period. The Amended Complaint (#36) does not allege that Mr. Siciliano was a member of the Board or the Committee, nor that he took any actions other than participating in corporate earnings conference calls. (Am. Compl. ¶¶ 109, 120 (#36).)

14

Counsel for Plaintiffs did not articulate at the hearing on the motions on March 10, 2011 any basis for Mr. Siciliano's fiduciary status.  As such, viewing the Amended Complaint (#36) and drawing all reasonable inferences in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have not sufficiently alleged that Mr. Siciliano was a fiduciary with respect to the Plan. Thus, the causes of action against Mr. Siciliano must be dismissed.

### ii. Count I: Failure to Prudently and Loyally Manage Plan Assets

This count is alleged against all Defendants. (Am. Compl. ¶ 197.)  Plaintiffs allege that Defendants failed to loyally and prudently manage the assets of the Plan because Defendants knew or should have known that IGT stock was not a suitable investment for the Plan, but continued to offer IGT stock as an investment option for Plan participants. (Id. ¶ 201.)  Defendants argue that the Plan expressly provided that IGT stock be offered as an investment option, and so the Committee could not have breached a fiduciary duty while preserving such option. (D's Memo. at 7 (#41).)  In their view, the Complaint is flawed because it seeks to impose liability for decisions reached by individuals acting in a settlor capacity, as opposed to a fiduciary one. See, e.g., Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999).  Defendants further contend that Plaintiffs assert a breach of fiduciary duty claim on an alleged failure to diversify.

ERISA requires that a "fiduciary shall discharge his duties...with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

15

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  In evaluating an alleged breach of fiduciary duty to prudently and loyally manage plan assets, the Ninth Circuit Court of Appeals has adopted the Moench standard formulated by the Third Circuit Court of Appeals in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995). Quan v. Computer Scis. Corp., 623 F.3d 870 (9th Cir. 2010).  The rebuttable Moench presumption provides that an eligible individual account plan fiduciary who invests in employer stock is presumed to have acted consistently with ERISA, which presumption may be overcome by showing that the fiduciary abused his discretion. Quan, 623 F.3d at 881. See Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995).  Specifically, the "plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the [plan's terms] was in keeping with the settlor's expectations of how a prudent trustee would operate." Moench, 62 F.3d at 571.

The Ninth Circuit Court of Appeals has come to adopt the Moench presumption over time.  In Wright, the Court did not reject, but declined to apply the Moench presumption, finding that the plaintiffs' alleged facts "effectively preclude a claim under Moench." Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1098 (9th Cir. 2004).  The Court went on to note that plaintiffs' prudence claim would not avail under Moench or any other existing approach. Id.  In Wright, the Court noted in dicta its reservations that the Moench standard conflicts with ERISA's diversification exemption and/or could "inadvertently encourag[e] corporate officers to

utilize insider information for the exclusive benefit of the

corporation and its employees." Id. at 1098 n.4.

In Syncor, the Ninth Circuit Court of Appeals noted that the

Circuit had not yet adopted the Moench presumption, and declined to

do so. In re Syncor ERISA Litig., 516 F.3d 1095 (9th Cir. 2008).

The Court noted that the district court's determination that the

class did not rebut the Moench presumption "based solely on Syncor's

financial viability...is not an appropriate application of the

prudent man standard set forth in either Moench or 29 U.S.C. §

1104." Id. at 1102.

The Ninth Circuit Court of Appeals formally adopted the Moench

presumption in Quan. Quan v. Computer Scis. Corp., 623 F.3d 870, 881

(9th Cir. 2010). Here, the Court set aside its objections to the

Moench presumption outlined in Wright, that "1) the presumption

conflicts with ERISA's diversification exemption, 29 U.S.C. §

1004(a)(2); and 2) the presumption encourages fiduciaries to engage

in insider trading." Id. at 880. The Quan Court found that the

Moench presumption "is fully reconcilable with ERISA's statutory

text and does not encourage insider trading, when properly

formulated." Id.

Mere "stock fluctuations, even those that trend downward

significantly," are insufficient to rebut the Moench presumption.

Wright, 360 F.3d at 1099. Indeed, the Quan Court noted that

"[t]here is no bright-line rule as to how much evidence is needed to

rebut the Moench presumption." Quan, 623 F.3d at 883. However, "[a]

guiding principle... is that the burden to rebut the presumption

varies directly with the strength of a plan's requirement that

fiduciaries invest in employer stock." Id.  In general, courts have set the bar for rebutting the Moench presumption high. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 256 n. 12 (5th Cir. 2008) (citing cases with facts insufficient to rebut the Moench presumption, including a "company-wide financial woes and eighty percent drop in stock price" and "widespread accounting violations, restated revenues for three years, and seventy-five percent drop in stock price.").  Indeed, the Ninth Circuit Court of Appeals in Wright found that an "ill-fated merger, reverse stock split and seventy-five percent drop in stock price" were insufficient to successfully rebut the Moench presumption.  Id.

> ### a. Plaintiffs' Claim for Imprudent Investment of Plan Assets, Alleging that Committee Members were Fiduciaries with the Discretion to Remove IGT Stock from the Menu of Investment Options Offered under the Plan, Fails to Rebut the Moench Presumption

Fiduciaries must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. 29 U.S.C. § 1104(a)(1)(D).

As stated above, the Ninth Circuit Court of Appeals has adopted the rebuttable Moench presumption that an eligible individual account plan fiduciary who invests in employer stock is presumed to have acted consistently with ERISA, which presumption may be overcome by showing that the fiduciary abused his discretion. Quan v. Computer Scis. Corp., 623 F.3d 870, 881 (9th Cir. 2010). See Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995)  Courts have

18

found that even facts alleging "ill-fated merger, reverse stock split and seventy-five percent drop in stock price," "company-wide financial woes and eighty percent drop in stock price" and "widespread accounting violations, restated revenues for three years, and seventy-five percent drop in stock price" are insufficient to rebut the <u>Moench</u> presumption. <u>See Kirschbaum</u>, 526 F.3d at 256 n. 12.

The burden to rebut the <u>Moench</u> presumption "varies directly with the strength of a plan's requirement that fiduciaries invest in employer stock." <u>Wright</u>, 360 F.3d at 1099. The Plan here specifically contemplates that employees will have the opportunity to purchase the company's securities. Section 3.8(b)(1) of the Plan provides that "[o]ne of the Investment Funds available shall be the IGT Stock Fund." (#36-2 at 44.) The Court is not persuaded that the Plan language contemplating the option of an IGT Stock Fund is enough to immunize Defendants from any potential liability as fiduciaries. While Defendant IGT emphasizes that the decision to offer IGT stock as a Plan option was one made in a settlor capacity,[2] the relevant question for the Court's functional inquiry here is whether the Committee had any discretionary authority to remove the IGT Stock Plan option after it had been created. <u>Kayes v. Pac. Lumber Co.</u>, 51 F.3d 1449, 1459 (9th Cir. 1995). <u>See also</u> <u>In re Wash. Mut., Inc. Sec.</u>, 2009 U.S. Dist. LEXIS 109961 at *30. On this point, Plaintiffs point to Section 3.8(a) of the Plan, which provides that the "Committee may, in its discretion, terminate any

---

[2] Defendant IGT contends that plan design is a settlor, not a fiduciary, function, and so IGT cannot be held liable for the inclusion of the IGT stock fund as an investment option under the Plan.

Investment Fund." (#36-2 at 43.)  While Defendants would have the
Court read this provision to mean that the Committee only had the
authority to replace Investment Funds other than the IGT Stock Fund,
the Plan language suggests that the term "Investment Fund"
encompasses the IGT Stock Fund.  See In re Wash. Mut., Inc. Sec.,
2009 U.S. Dist. LEXIS 109961 at *30-31.  Specifically, the Plan
defines "Investment Fund" as "one of the funds established by the
Committee for the investment of the assets of the plan pursuant to
Section 3.8," which section contemplates the creation of the IGT
Stock Fund at Section 3.8(b). Id. at *18. Plaintiffs' allegation
that the "Committee...had the power to terminate any Investment Fund
Company Stock," including IGT stock, appears sufficient at this
stage in light of the Plan's embracive use of "Investment Fund." Id.
at *31.  The terms of the Plan create some ambiguity as to whether
the Committee's discretion to terminate Investment Funds would
include the termination of the IGT Stock Fund.  Nevada law allows
for the introduction of extrinsic evidence to resolve ambiguous
contract language. Fondren v. R.D. Schmidt, Inc., 1991 U.S. App.
LEXIS 18441 (9th Cir. May 15, 1991).  Thus, we note that there could
be extrinsic evidence that would clarify the Plan's ambiguity with
respect to whether the Committee could terminate the IGT stock fund.
Resolving this ambiguity in Plaintiffs' favor at the motion to
dismiss phase, we find a plausible claim that Committee members were
fiduciaries with the discretion to remove IGT stock from the menu of
investment options offered under the Plan.

Discretion to remove the IGT Stock Fund as an investment option
will lower the threshold of evidence necessary to rebut the Moench

presumption, but is alone insufficient to do so. Plaintiffs have
not alleged facts sufficient to show that Defendants abused their
discretion in retaining the IGT Stock Fund as an investment option
under the Plan. Here, by the end of Plan year 2008, the amount of
shares of IGT stock held by the Plan increased to 2,878,778, while
the market value of such shares decreased to $34,228,670,
representing a decrease of 67%. (Am. Compl. ¶ 67.) Courts including
the Ninth Circuit Court of Appeals in <u>Wright</u> have found that more
substantial decreases in stock prices coupled with other factors
such as "company-wide financial woes," "widespread accounting
violations" or an "ill-fated merger" and reverse stock split are
insufficient to rebut the <u>Moench</u> presumption. <u>Kirschbaum v. Reliant
Energy, Inc.</u>, 526 F.3d 243, 256 n. 12 (5th Cir. 2008) Although the
threshold will be lower in this case than in others due to our assumption
that Defendants had discretion to terminate the IGT Stock Fund as an
investment option under the Plan, Plaintiffs' allegations have failed to
show an abuse of discretion sufficient to rebut the <u>Moench</u> presumption on
the part of Defendants in maintaining the IGT Stock Fund as an investment
option. <u>See</u> <u>id.</u>

Therefore, on this basis, we find that Plaintiffs' allegations
are insufficient to sustain a claim for breach of the fiduciary duty
of prudence and loyalty for imprudent investment of Plan assets with
respect to Defendants.

**b. Plaintiffs' Claim Based on Misrepresentation and**

**Failure to Disclose Material Facts to Plan**

**Participants is Plausible**

Plaintiffs allege that Defendants misrepresented and failed to

21

disclose material facts with respect to the Plan to Plan participants through actions such as the incorporation of false SEC statements into the Plan documents and the making of misleading statements to the press and IGT shareholders. (Am. Compl. ¶ 216 (#36).)  We have found that IGT was a fiduciary with respect to communications regarding the Plan, and Defendants do not dispute that the Committee was a fiduciary with respect to Plan communications.

"[A]n ERISA fiduciary has a duty under section 1104(a) to convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits." In re Xerox Corp. ERISA Litig., 483 F. Supp. 2d 206 (2007)(quoting Unisys Sav. Plan Litig., 74 F.3d at 441). In Electronic Data Systems, the court found that the plaintiffs had sufficiently pled a claim for failure to provide complete and accurate information to plan participants and beneficiaries where:

> "Plaintiffs allege that the duty of loyalty 'requires
> fiduciaries to speak truthfully to participants, not
> to mislead them regarding the plan or plan assets,
> and to disclose information that participants need in
> order to exercise their rights and interests under
> the Plan.' First Am. Consolidated Class Action Compl.
> P 171. Defendants allegedly breached their fiduciary
> duties by not disclosing information which would have
> revealed problems with EDS stock as an investment,
> when Defendants allegedly knew that EDS stock was
> overpriced because EDS faced serious financial

22

difficulties unknown to the public. In other words,
Plaintiffs allege that Defendants, as fiduciaries,
offered their beneficiaries an investment which they
knew to be unsound and concealed any information that
would have allowed the beneficiaries to discover that
the investment was unsound."

In re Elec. Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658,
671-72 (E.D. Tex. 2004). See also Rankin v. Rots, 278 F. Supp.
2d 853, 876-77 (E.D. Mich. 2003) ("Defendants had a duty under
securities laws not to make any material misrepresentations;
they also had a duty to disseminate truthful information to
plan participants, including the information contained in SEC
filings."); In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d
745, 766 (S.D.N.Y. 2003) ("An ERISA fiduciary may not knowingly
present false information regarding a plan investment option to
plan participants. There is no exception to the obligation to
speak truthfully when the disclosure concerns the employer's
stock.").

Courts have held that dismissal at this stage is
inappropriate where SEC filings are incorporated by reference
into documents provided to plan participants because the
documents containing SEC filings are presumably used to convey
information to plan participants regarding the safety and value
of the company stock option within the plan. In re AEP Litig.,
327 F. Supp. 2d 812, 825 (S.D. Ohio 2004) (citing Vivien v.
Worldcom, Inc., 2002 U.S. Dist. LEXIS 27666 at *1, *7 (N.D.
Cal. July 26, 2002)); Schied v. Dynegy, 309 F. Supp. 2d 861,

888 (S.D. Tex. 2004).

Therefore, on this basis, we find that Plaintiffs' allegations are sufficient to sustain a claim for breach of the fiduciary duty to prudence and loyalty for misrepresentation and failure to disclose material facts with respect to IGT and the Committee.

### c. Plaintiffs Do Not Appear to Assert a Breach of Fiduciary Duty Claim Based on a Failure to Diversify

Defendants appear to conflate Plaintiffs' breach of fiduciary duty claim for failing to remove the IGT Stock Fund from the group of Investment Funds offered by the Plan with a claim for failure to diversify.  It appears to the Court, however, that the Amended Complaint (#36) does not, by its terms, advance a claim for breach of fiduciary duty based on a failure to diversify.  Rather, Plaintiffs' allegations more closely reflect those in In re Syncor, where plaintiffs asserted a claim for breach of fiduciary duty based on the selection of company stock as an investment option. In re Syncor ERISA Litig., 516 F.3d 1095, 1102 (9th Cir. 2008) (differentiating prudence claims based on the selection of investments from diversification claims).

### iii. Count II: Breach of Duty to Monitor

Where the discretion to appoint and remove fiduciaries exists, so exists the duty to monitor such fiduciaries. Batchelor v. Oak Hill Med. Group, 870 F.2d 1446, 1448-49 (9th Cir. 1989) (citing 29 C.F.R. § 2509.75-8, D-4; Leigh v. Engle,

727 F.2d 113, 133-34 (7th Cir. 1984) (same).  Plaintiffs have successfully alleged the fiduciary status of the Director Defendants with respect to the discretion to appoint the Committee members.  As such, Plaintiffs' allegations are sufficient to sustain a claim for breach of duty to monitor as to the Director Defendants.

<u>iv. Count III: Breach of Duty of Loyalty - Failure to Avoid or Ameliorate Conflicts of Interest</u>

Plaintiffs contend that Defendants "failed to avoid or ameliorate inherent conflicts of interests which crippled their ability to function as independent, 'single-minded' fiduciaries with the best interests of the Plan and Plan participants solely in mind." (Am. Comp. ¶ 7 (#36).)

While Plaintiffs do not specifically state so, Plaintiffs' allegations appear to relate to the potential conflict of interest affecting Plan fiduciaries who received compensation from IGT in the form of company stock.  However, such allegations are insufficient to state a claim for beach of the fiduciary duty of loyalty under ERISA. <u>See</u> <u>In re Syncor ERISA Litig.</u>, 351 F. Supp. 2d at 987-88 (noting that "[u]nder this theory, corporate defendants would always have a conflict of interest"); <u>In re Citigroup ERISA Litig.</u>, 2009 U.S. Dist. LEXIS 78055 at *26 (S.D.N.Y. Aug. 31, 2009) (holding that allegations that the defendants' compensation was "tied to the performance of Citigroup stock" were insufficient to state an actionable claim for conflict of interest); <u>In re WorldCom</u>, 263 F. Supp. 2d at 768 (S.D.N.Y. 2003) (holding that allegations that the

25

defendant owned shares of WorldCom stock were insufficient to establish an actionable conflict of interest).  Indeed, ERISA explicitly permits a corporate officer, employee, or agent to serve as a plan fiduciary. <u>See</u> 29 U.S.C. § 1108(c)(3) ("Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest.").

Therefore, on the foregoing basis, Plaintiffs' claim for breach of the fiduciary duty of loyalty must be dismissed.

<u>v. Count IV: Breach of Duties and Responsibilities as Co-Fiduciaries</u>

Plaintiffs must first state one or more valid claims for breach of fiduciary duty under ERISA before they may allege a claim for breach of duties and responsibilities as co-fiduciaries.  ERISA renders a fiduciary liable for the breach of another fiduciary if he or she (i) participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (ii) enables another fiduciary to commit a breach; or (iii) has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a).

To bring a claim under 29 U.S.C. § 1105(a)(1), Plaintiffs "'must show: (1) that a co-fiduciary breached a duty to the plan, (2) that the fiduciary knowingly participated in the breach or undertook to conceal it, and (3) damages resulting

from the breach.'" <u>In re Touch Am. Holdings, Inc. ERISA Litig.</u>, 2006 U.S. Dist. LEXIS 94707 (D. Mont. June 15, 2006), quoting <u>Silverman v. Mutual Ben. Life Ins. Co.</u>, 941 F. Supp. 1327, 1335 (E.D.N.Y. 1996), aff'd, 138 F.3d 98 (2nd Cir. 1998)(citation omitted).

A claim under 29 U.S.C. § 1105(a)(2) requires a plaintiff to prove that the fiduciary "failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." <u>In re Enron Corp. Sec. Derivative & ERISA Litig.</u>, 284 F. Supp. 2d 511, 581 (S.D. Tex. 2003)(citing <u>Silverman</u>, 941 F. Supp. at 1335). Unlike co-fiduciary liability under 29 U.S.C. § 1105(a)(1) and (3), co-fiduciary liability under § 1105(a)(2) does not require a plaintiff to prove knowledge. <u>Id.</u>

The elements of a cause of action under § 1105(a)(3) require a plaintiff to show: "(1) that the fiduciary had knowledge of the co-fiduciary's breach, and (2) that the fiduciary failed to make reasonable efforts under the circumstances to remedy the breach." <u>Silverman</u>, 941 F. Supp. at 1337.

Proof of actual, rather than constructive, knowledge is required under 29 U.S.C. § 1105(a)(1) and (3). Such co-fiduciary liability has been labeled "'knowing participation' liability." <u>LeBlanc v. Cahill</u>, 153 F.3d 134, 151-52 (4th Cir. 1998)(citation omitted).

The allegations of co-fiduciary liability in the Amended Complaint (#36) are insufficient to plead a claim for co-fiduciary liability against any Defendant under 29 U.S.C. §

1105(a)(1) and § 1105(a)(3).  The types of co-fiduciary breach
alleged are unclear, and the allegations do not clearly
identify actions taken by each Defendant alleged to constitute
co-fiduciary breach. (Am. Compl. ¶¶ 8, 186-87, 191-96, 243, 245
(#36).)  The allegations are devoid of specific facts, even in
the most favorable light, which tend to show any particular
Defendant was a knowing participant in another's putative
breach. Id.

However, Plaintiffs have sufficiently alleged a claim for
co-fiduciary breach under 29 U.S.C. § 1132(a)(2).  Co-fiduciary
liability may be shown under this section by proof that the
fiduciary failed to comply with its duties under ERISA, thereby
enabling other Defendants' fiduciary breaches.  The pleadings
are sufficient to state a claim for such breach. See, e.g., In
re Touch Am. Holdings, Inc. ERISA Litig., 2006 U.S. Dist. LEXIS
94707 at *37 (D. Mont. 2006).

Viewing the Amended Complaint (#36) and drawing all
reasonable inferences in the light most favorable to the
Plaintiffs, the Court has found that Plaintiffs have
sufficiently alleged the following claims for breach of
fiduciary duty:

(i) breach of duty of prudence and loyalty with respect to
the Committee and IGT because Plaintiffs have sufficiently
shown that the Committee and IGT failed to disclose material
facts with respect to the Plan to Plan participants; and

(ii) breach of duty to monitor with respect to the
Director Defendants because Plaintiffs have successfully

alleged the fiduciary status of the Director Defendants with respect to the discretion to appoint the Committee members.

Therefore, we find that Plaintiffs have sufficiently alleged claims for co-fiduciary liability with respect to those claims.

### vi. Conclusion Regarding Claims of Breach of Fiduciary Duty

Plaintiffs have successfully asserted the following breaches of fiduciary duty by Defendants: (i) breach of duty of prudence and loyalty regarding failure to disclose material facts regarding the Plan with respect to the Committee and IGT; (ii) breach of duty to monitor with respect to the Director Defendants; and (iii) breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(2) with respect to (i) and (ii). Contrary to Defendants' contentions, Plaintiffs do not appear to assert a breach of fiduciary duty claim based on a failure to diversify. The allegations of co-fiduciary liability in the Amended Complaint (#36) are insufficient to plead a claim for co-fiduciary liability against any Defendant under 29 U.S.C. § 1105(a)(1) and § 1105(a)(3).

### B. Defendants' Motion for Summary Judgment (#44)

In their MSJ (#44), Defendants contend that Plaintiffs lack standing to bring their ERISA claims as a result of certain releases signed by Plaintiffs at the termination of their employment (the "Releases," and each, a "Release") in

1  consideration for severance pay.[3]

2      In <u>Varity Corp. v. Howe</u>, the United States Supreme Court

3  held that an individual may bring a claim for breach of fiduciary

4  duty under § 502(a)(3) of ERISA.  <u>Varity Corp. v. Howe</u>, 516 U.S.

5  489 (1996).  Here, however, Plaintiffs are not requesting

6  individual relief, but relief for the Plan and all of the Plan's

7  participants, including themselves. (Am. Compl. ¶ 1. (#36))

8  <u>Bowles v. Reade</u>, 198 F.3d 752 (9th Cir. 1999); <u>cf.</u> <u>Mertens v.</u>

9  <u>Black</u>, 948 F.2d 1105, 1106 (9th Cir. 1991) (holding that

10 plaintiffs made individual claims for breach of fiduciary duty

11 where they neither purported to represent the plan nor sought a

12 recovery for the plan) (citing <u>Koch v. Kaiser Steel Retirement</u>

13 <u>Plan</u>, 947 F.2d 1412 (9th Cir. 1991)).  Because Plaintiffs' claims

14 were not individual, Plaintiffs could not settle such claims

15 without the consent of the Plan.  <u>Bowles v. Reade</u>, 198 F.3d at

16 760. As such, the Releases signed by Plaintiffs cannot be found

17 to have released Plaintiffs' claims on behalf of the Plan under §

18 502(a)(3) of ERISA. <u>Id.</u> at 759. <u>See also</u> <u>In re Schering Plough</u>

19 <u>Corp. ERISA Litig.</u>, 589 F.3d 585, 594 (3rd Cir. 2009)(plaintiff's

20 release does not bar her from bringing the § 502(a)(2) claim on

21 behalf of the plan); <u>Johnson v. Couturier</u>, No. 05-2046, 2006 U.S.

22 Dist. LEXIS 77757 at *2 (E.D. Cal. Oct. 13, 2006) (release does

23 not preclude § 502(a)(2) action; <u>In re JDS Uniphase Corp. ERISA</u>

24 <u>Litig.</u>, 2006 US Dist. LEXIS 68271 (N.D. Cal. Sept. 11, 2006)

25

26      [3] Plaintiffs have standing to bring suit because their claims
   apply to Plan participants as a whole, and because ERISA authorizes
27 participants such as Plaintiffs to sue for plan-wide relief for breach
   of fiduciary duty.

28
                                    30

("The release . . . do[es] not bar ERISA fiduciary duty claims brought by plan beneficiaries on behalf of the plan.").

On the foregoing basis, we find that Plaintiffs have standing to bring their ERISA claims.

### C. Defendant IGT Profit Sharing Committee's Alternative Motion to Dismiss (#46)

#### i. The Committee is a Juridical Entity that Qualifies as a "Person" Capable of Being Sued Under ERISA

Defendant Committee claims that "Plaintiffs cannot state a viable ERISA claim against the Committee because the Committee is not a 'person' capable of being sued for breach of fiduciary duty under ERISA." (MTD #46 at 3.)  Section 502(a) of ERISA provides that liability for a breach of fiduciary duty may only be imposed on a "person who is a fiduciary with respect to a plan . . . ." 29 U.S.C. § 1109(a).  Under ERISA, "person" means "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).  Plaintiffs contend that the Committee qualifies as an "unincorporated organization," "association" and "employee organization," under ERISA, and that the bulk of case law indicates that the Committee qualifies as a "person" liable under ERISA.

As ERISA does not define "association," the term should be given "its ordinary or natural meaning." <u>Johnson v. United States</u>, 130 S. Ct. 1265, 1270 (2010).  The United States Supreme Court has looked to sources such as Black's Law

Dictionary and Webster's Third International Dictionary to define an association as "'an organization of persons having a common interest,'" and "a 'collection of persons who have joined together for a certain object.'" Boyle v. United States, 129 S. Ct. 2237, 2244 (2009).  The Supreme Court has commented that associations are "amorphous legal creatures." Rowland v. California Men's Colony, 506 U.S. 194, 204 (1993).  As such, a broad construction of the term is reasonable. See, e.g., Kayes v. Pacific Lumber Co., 1993 U.S. Dist. LEXIS 21090 at *13 (N.D. Cal. April 14, 1993).  On this basis, the Committee may reasonably be defined as an association, and therefore a person, which may be held liable under ERISA for breach of fiduciary duty.

The United States Supreme Court has held that "ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty and lack of compliance with benefit plans." Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 110 (1989) (citing 29 U.S.C. §§ 1132(a), 1132(f)).

Further, the Ninth Circuit Court of Appeals has held that ERISA authorizes suits against fiduciaries as plan administrators. Concha v. London, 62 F.3d 1493, 1501 (9th Cir. 1995).  Hence, the Committee acting as such is a person or entity capable of being sued under ERISA.  In addition, other courts have interpreted this holding to indicate that a committee acting as a plan administrator and/or fiduciary is a legal entity capable of being sued under ERISA. See, e.g., In

1 | re Enron Corp. Sec., Derivative & "ERISA" Litig., 284 F. Supp.

2 | 2d 511, 614-18 (S.D. Tex. 2003); MacRae v. Rogosin Converters,

3 | Inc., 301 F. Supp. 2d 471, 476 (M.D.N.C. 2004); Breedlove v.

4 | Teletrip Co., 1993 U.S. Dist. LEXIS 10278 (N.D. Ill. July 26,

5 | 1993); In re Robertson, 115 B.R. 613, 622 (Bankr. N.D. Ill.

6 | 1990); Reynolds v. Bethlehem Steel Corp., 619 F. Supp. 919, 928

7 | (D. Md. 1984); Boyer v. J.A. Majors Co., Employees' Profit

8 | Sharing Plan, 481 F. Supp. 454, 458 (N.D. Ga. 1979).  We find

9 | this authority persuasive.[4]

10 |     Here, the Committee was a group of individuals united for

11 | the common purpose of administering the Plan.  The Plan

12 | documents name the Committee as the Plan Administrator and

13 | Fiduciary. (IGT Profit Sharing Plan ¶ 7.8 (#36-2).)  As an

14 | association that is the administrator and named fiduciary of

15 | the Plan, the Committee qualifies as a "person" that may be

16 | sued under ERISA.  Having found that the Committee qualifies as

17 | an association, we need not consider whether it would also

18 | qualify as an employee organization and/or unincorporated

19 | organization for purposes of ERISA.

20 |         ii. The Committee was Not Timely Served Under Federal

21 |         Rules of Civil Procedure 4.  The Court Deems it

22 |         Appropriate to Grant Plaintiffs an Extension of

23 |         Time to Properly Serve the Committee.

24 |

25 |    [4] As noted by Plaintiffs, the cases cited by Defendants for the proposition that a committee is not a legal entity capable of being sued under ERISA are distinguishable.  One such line of cases

26 | considers committees which are not plan administrators, as here, while the other relies on North Carolina state law, which is not here at

27 | issue.

28 |

Defendant Committee alleges that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(5) because the Committee was not properly served with process pursuant to Federal Rule of Civil Procedure 4(h) within the time period specified by Federal Rule of Civil Procedure 4(m). (Alternative MTD at 4-5 (#46).)  Plaintiffs bear the burden of establishing the validity of service of process when defendants make a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). <u>See</u> <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir. 2004).

Pursuant to Federal Rule of Civil Procedure 4(h), a domestic or foreign corporation, partnership or other unincorporated association that is subject to suit under a common name may be served (i) by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ."; or (ii) in accordance with state rules regarding service of such entity under Federal Rule of Civil Procedure 4(e)(1).  As Nevada law generally does not permit suit or service on an unincorporated association, service on the Committee must have been made on an "officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process" in order to be valid. <u>See</u> <u>Strotek Corp. v. Air Tranp. Ass'n of Am.</u>, 300 F.3d 1129, 1134 n.2 (9th Cir. 2002).

Service of process on a defendant must be made within one hundred twenty (120) days of filing a complaint. FED. R. CIV. P.

4(m).  Plaintiffs' original complaint (#1), naming the
Committee as a defendant, were filed on October 2, 2009.  As
Defendants allege, the filing of Plaintiffs' Amended Complaint
(#36) "did not re-start the clock on service." (Alternative MTD
at 8 (#46).)  The filing of an amended complaint does not re-
start the one hundred twenty day period provided by Federal
Rule of Civil Procedure 4(m) "except as to those defendants
newly added in the amended complaint."  Bolden v. City of
Topeka, 441 F.3d 1129, 1148 (10th Cir. 2006).

Here, service of process was made upon Chrissy Lane,
Manager of Legal Administration at IGT. (Lane Affidavit ¶ 2
(#47).)  While there is some dispute over whether Ms. Lane
represented to the process server that she was authorized to
accept service on behalf of the Committee (Compare Jones
Affidavit at 1 (#57) with Lane Affidavit ¶ 5 (#47)), the
parties do not contest that Ms. Lane is not an officer or agent
of the Committee, nor was she at the time of attempted service
of process.

Plaintiffs contend, however, that "[i]n the Ninth Circuit,
'service of process is not limited solely to officially
designated officers, managing agents or agents appointed by law
for the receipt of process.'" (Resp. to Alternative MTD at 9
(#55).) Direct Mail Specialists v. Eclat Computerized
Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988).  Rather,
Plaintiffs assert that service may be made upon a
representative so integrated with the organization that he will
know what to do with the papers.  In support of their position,

Plaintiffs cite cases indicating that service on an office
manager or secretary of an organization may be sufficient in
the Ninth Circuit. See, e.g., Direct Mail Specialists, Inc.,
840 F.2d at 688-89).

While service on a secretary or office manager of an
organization may be sufficient under Ninth Circuit case law for
purposes of Federal Rule of Civil Procedure 4(m), Plaintiffs do
not address the fact that Chrissy Lane was not an individual
who held a position that indicates authority within the
organization being served.  Specifically, Chrissy Lane was an
employee of IGT, and there is no evidence in the record to
indicate that she held any position or maintained any
affiliation with the Committee.  As such, service on Chrissy
Lane was improper.

In the alternative, Plaintiffs request an extension of
time to serve the Committee. (Resp. to Alternative MTD n.2
(#55).)  The Court "has broad discretion to extend time for
service under Rule 4(m)." Mann v. Am. Airlines, 324 F.3d 1088,
1090 (9th Cir. 2003).  In considering whether to grant an
extension, "a district court may consider factors 'like statute
of limitations bar, prejudice to the defendant, actual notice
of a lawsuit, and eventual service." Efaw v. Williams, 473 F.3d
1038, 1040 (9th Cir. 2007) (quoting Troxell v. Fedders of N.
Am. Inc., 160 F.3d 381, 383 (7th Cir. 1998).  Here, the statute
of limitations has not yet run.  There would be no prejudice to
Defendants because Plaintiffs have the option of filing another
action against the Committee.  Defendants did have actual

notice of the lawsuit and timely filed a motion to dismiss (#46) in response to the Amended Complaint (#36). In addition, it appears that Plaintiffs reasonably believed that the Committee was properly served. Indeed, the affidavit of the process server Mr. Jones states that Chrissy Lane "indicated she was authorized to accept on behalf of the IGT Profit Sharing Committee." (Jones Affidavit at 1 (#57).)

We conclude on this basis that Plaintiffs should be granted an extension of time to properly serve the Committee under Federal Rule of Civil Procedure 4(m).

## VI. Conclusion

Plaintiffs have alleged that Defendants breached their fiduciary duties under Section 502(a) of ERISA.

We have found that Defendant IGT is a *de facto* fiduciary with respect to communications regarding the Plan and with respect to the appointment, monitoring and removal of the Trustee of the Plan. Director Defendants are *de facto* fiduciaries with respect to the appointment, monitoring and removal of the Committee members. Defendant Committee is a named and *de facto* trustee with respect to the administration of the Plan. Finally, we have found that Defendant Siciliano is not a fiduciary with respect to the plan.

Plaintiffs have sufficiently alleged the following claims for breach of fiduciary duty: (i) breach of duty of prudence and loyalty regarding failure to disclose material facts regarding the Plan with respect to the Committee and IGT; and (ii) breach of duty to monitor with respect to the Director

Defendants.  In addition, Plaintiffs have sufficiently alleged claims for co-fiduciary liability against the Committee, IGT and the Director Defendants with respect to those claims.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion to dismiss (#40) is **GRANTED IN PART and DENIED IN PART**, on the following basis:

**GRANTED** as to the claim of failure to avoid conflicts of interest against all Defendants;

**GRANTED** as to the claim of breach of prudence and loyalty with respect to the imprudent investment of Plan assets against all Defendants.

**GRANTED** as to the claim of breach of prudence and loyalty with respect to the failure to disclose material facts regarding the Plan against Defendants Siciliano and Director Defendants;

**GRANTED** as to the claim of co-fiduciary liability against all Defendants under 29 U.S.C. § 1105(a)(1) and 29 U.S.C. § 1105(a)(3) and against Defendant Siciliano under 29 U.S.C. § 1105(a)(2);

**DENIED** as to the claim of breach of duty to monitor against Defendant IGT and Director Defendants;

**DENIED** as to the claim of breach of prudence and loyalty with respect to the failure to disclose material facts regarding the Plan against Defendants IGT and Committee; and

**DENIED** as to the claim of co-fiduciary liability against Defendants Committee, IGT and Director Defendants under 29 U.S.C. § 1105(a)(2).

1    **IT IS HEREBY FURTHER ORDERED** that Defendants' motion for

2  summary judgment (#44) is **DENIED.**

3    **IT IS HEREBY FURTHER ORDERED** that Defendant IGT Profit

4  Sharing Committee's alternative motion for summary judgment

5  (#46) is **DENIED**.

6    **IT IS HEREBY FURTHER ORDERED** that Plaintiffs shall have

7  twenty-one (21) days from the date hereof to properly serve

8  Defendant IGT Profit Sharing Committee.

9

10 DATED: March 16th 2011.

11

12                                    _Edward C. Reed._

13                         UNITED STATES DISTRICT JUDGE

39