1

2

3

4 **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

5

6

7 CHRISTOPHER CARR, ROXANNE CLAYTON, )   3:09-cv-00584-ECR-WGC
and BRIAN BENNETT,                )   (Base Case)
8                                  )
     Plaintiffs,                   )
9                                  )
vs.                               )   **Order**
10                                 )
INTERNATIONAL GAME TECHNOLOGY, et  )
11 al.,                            )
                                   )
12    Defendants.                  )
                                   )
13 _____ )
                                   )
14 RANDOLPH K. JORDAN and KIMBERLY J. )   3:09-cv-00585-ECR-WGC
JORDAN,                            )   (Member Case)
15                                 )
     Plaintiffs,                   )
16                                 )
vs.                               )
17                                 )
INTERNATIONAL GAME TECHNOLOGY, et  )
18 al.,                            )
                                   )
19    Defendants.                  )
                                   )
20 _____ )

21

22     Plaintiffs are former employee participants in Defendant

23 International Game Technology's ("IGT") profit-sharing plan (the

24 "Plan") who have brought a class action suit pursuant to Federal Rule

25 of Civil Procedure ("FRCP") 23 to allege breach of fiduciary duty

26 claims under Section 502(a) of the Employee Retirement Income Security

27 Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2).  Now pending before the

28

Court is Plaintiff's Motion for Class Certification and Related Relief (#106).

## I. Background

The Plan is a voluntary defined contribution plan whereby participants make contributions to the Plan and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants, which are then allocated to participants' individual accounts.  While the parties disagree as to whether the terms of the Plan mandate that IGT stock be offered as an investment option, the IGT Stock Fund was offered during the relevant period and its performance provides the basis for this suit.

Plaintiffs filed the amended complaint (#36) on March 10, 2010, alleging several breaches of fiduciary duty under ERISA § 502(a)(2). On March 16, 2011, we issued an order (#80) in which we granted in part and denied in part Defendants' motion to dismiss (#40) and denied Defendants' motion for summary judgment (#44) and Defendant IGT Profit Sharing Committee's alternative motion for summary judgment (#46).  We dismissed the following claims: failure to avoid conflicts of interest against all Defendants; breach of prudence and loyalty with respect to the imprudent investment of Plan assets against all Defendants; breach of prudence and loyalty with respect to failure to disclose material facts regarding the Plan against Defendants Siciliano and the Director Defendants; co-fiduciary liability against all Defendants under 29 U.S.C. § 1105(a)(1) and (a)(3) and against Defendant Siciliano under § 1105(a)(2).

Therefore, only the following claims remain: (i) Plaintiffs' claim that IGT and the Committee breached their fiduciary duties by failing to provide complete and accurate information about the IGT stock to the Plan Participants (the "communications claim"), (ii) Plaintiffs' claim that the Director Defendants breached their duty to monitor the Committee (the "monitoring claim"), and (iii) breach of co-fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2) with respect to (i) and (ii) (the "co-fiduciary claim").

On June 14, 2011, Plaintiffs filed a motion for class certification (#106).  Defendants responded (#117) on August 29, 2011, and Plaintiffs replied (#120) on September 23, 2011. Defendants filed supplemental authority (#123) on January 13, 2012, to which Plaintiffs responded (#126) on January 23, 2012.

## II. Legal Standard

A motion for class certification involves a two-part analysis. First, the Plan Participants must demonstrate that the proposed class satisfied the requirements of Federal Rule of Civil Procedure 23(a): (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).  Second, Plaintiffs must meet the requirements of at least one of the subsections of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th

3

1  Cir. 2001).  The party seeking certification must provide facts
2  sufficient to satisfy the requirements of Rule 23(a) and (b).
3  Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir.
4  1977).  Although the Court has "broad discretion" to certify a
5  class, it must rigorously assess whether the moving party has met
6  its burden.  Zinser, 253 F.3d at 1186.  The certification of a class
7  is "an exception to the usual rule that litigation is conducted by
8  and on behalf of the individual named parties only."  Wal-Mart
9  Stores, Inc. v. Dukes, -- U.S. --, 131 S.Ct. 2541, 2550 (2011)
10 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)).

11

12                    **III. Discussion**

13      Plaintiffs seek to certify the following class:

14      All persons, other than Defendants, who were participants
        in or beneficiaries of the Plan at any time between
15      November 1, 2007, through and including April 23, 2009,
        and whose account included investments in IGT Stock.
16
   Plaintiffs argue that they have satisfied the requirements of
17
   Rule 23(a) and (b).  Defendants argue that Plaintiffs have
18
   failed to satisfy the commonality or typicality requirements of
19
   Rule 23(a) or show that Plaintiffs are adequate class
20
   representatives.  Defendants also argue that Plaintiffs have
21
   not satisfied the requirements in Rule 23(b).
22

23      **A. Rule 23(a)**

24      To certify a class, the Court must find that the four
25 prerequisites under Rule 23(a), commonly referred to as
26 "numerosity," "commonality," "typicality," and "adequacy" exist.

27

28                           4

For the reasons herein, Plaintiffs have not met their burden of demonstrating each prerequisite.

### 1. Numerosity

Rule 23(a)(1) requires that "joinder of all members is impracticable." Here, the Form 5500 filed by Plaintiffs with the Internal Revenue Service (#106-3) indicates that the Plan had more than 5,000 participants. A class possibly exceeding 5,000 members renders joinder impracticable. Defendants do not dispute numerosity. Accordingly, Rule 23(a)(1) is met.

### 2. Commonality

The commonality requirement mandates that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality focuses on the relationship of common facts and legal issues among class members." Kanawi v. Bechtel Corp., 254 F.R.D. 102, 107 (N.D. Cal. 2008). A plaintiff must show that the contended common question of law or fact is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2551.

Plaintiffs' communications claim primarily alleges that Defendants IGT and the Committee issued overly optimistic and grossly inflated growth statements, projections, SEC filings, and/or financial reports and minimized the impact of a slowdown in the gaming industry. (Am. Compl. ¶¶ 67, 76, 85-86, 90, 99, 107, 116, 124, 145, 174, 201, 208, 216 (#36).) Defendants contend that to the

1 extent that Plaintiffs allege claims based on a theory of

2 misrepresentation, Plaintiffs' class should not be certified because

3 misrepresentation claims depend on individualized questions of

4 reliance.

5     To prove an ERISA breach of fiduciary duty based on a

6 misrepresentation, a plaintiff must establish each of the following

7 elements: (1) the status as an ERISA fiduciary acting as a

8 fiduciary; (2) a misrepresentation on the part of the defendant; (3)

9 the materiality of that misrepresentation; and (4) *detrimental*

10 *reliance by the plaintiff* on the misrepresentation. Harris v.

11 Amgen, Inc., No. CV 07-5442 PSG (PLAx), 2010 WL 744123, at *13 (C.D.

12 Cal. Mar. 2, 2010) (citing In re Computer Scis. Corp. Erisa Litig.,

13 635 F.Supp.2d 1128, 1140 (C.D. Cal. 2009)) (emphasis in original).

14 For this reason, many courts within the Ninth Circuit have dismissed

15 or granted summary judgment on communication claims brought under

16 ERISA § 502(a)(2) where plaintiffs have failed to establish the

17 detrimental reliance element of a misrepresentation claim. See,

18 e.g., Harris, 2010 WL 744123; In re Computer Sciences, 635 F.Supp.2d

19 1128; Schulenberg v. Rawlings Co., LLC, No. CVN03-0134-HDM(VPC),

20 2003 WL 22129230, at *5-6 (D.Nev. Aug. 20, 2003); see also Kenney v.

21 State Street Corp., 754 F.Supp.2d 288 (D. Mass. 2010) (granting

22 defendants' motion for summary judgment on misrepresentation claim

23 brought as a putative class action where named plaintiff testified

24 that he never read the alleged misrepresentations); Pell v. E.I.

25 DuPont De Nemours & Co, Inc., 348 F.Supp.2d 306, 315 (D.Del. 2004)

26

27

28                                                  6

1  (granting Defendants' motion for summary judgment because plaintiffs

2  could not prove detrimental reliance).

3      In the context of suing on behalf of a plan pursuant to ERISA §

4  502(a)(2) for breach of fiduciary duty, "[c]ourts disagree as to

5  whether reliance is a required element of such a claim." <u>Tibble v.</u>

6  <u>Edison Int'l</u>, No. CV 07-5359 SVW (AGRx), 2009 WL 6764541, at *3

7  (C.D. Cal. June 30, 2009) (citing <u>Jones v. Novastar Fin. Inc.</u>, 257

8  F.R.D. 181, 190 (W.D.Mo. 2009).  The Ninth Circuit has yet to

9  address the issue.  <u>Id.</u>  Courts that find that class certification

10 is not appropriate with regard to claims for breach of fiduciary

11 duty based on a misrepresentation theory have reasoned that the

12 issue of reliance is highly individualized and not suitable for

13 class treatment.  <u>Id.</u> (citations omitted); <u>see also</u> <u>George v. Duke</u>

14 <u>Energy Retirement Cash Balance Plan</u>, 259 F.R.D. 225, 240 (D.S.C.

15 2009) (denying certification of misrepresentation claims because

16 individual reliance issues defeat commonality requirement of Rule

17 23(a)); <u>In re Merck & Co., Inc. Sec., Derivative, & "ERISA" Litig.</u>,

18 MDL No. 1658 (SRC), 2009 WL 331426, at *6 (D.N.J. Feb. 10, 2009)

19 ("The individual character of the communications claims prevents

20 concluding that the allege breach has similarly affected the

21 potential class members.  As to the communications claims, the

22 proposed class fails to satisfy the requirements for certification

23 under Rule 23.") (footnote omitted); <u>Tootle v. ARINC, Inc.</u>, 222

24 F.R.D. 88, 98 (D.Md. 2004) (denying certification upon determining

25 that disclosure claim requires individual showings of detrimental

26 reliance); <u>Wiseman v. First Citizens Bank & Trust Co.</u>, 215 F.R.D.

27

28                                    7

1  507, 510-511 (W.D.N.C. 2003) (reaffirming previous ruling denying

2  motion for class certification upon finding that each class member

3  would have to establish reliance).

4      We agree with those courts that find that individual issues of

5  reliance in a communications claim brought pursuant to ERISA §

6  502(a)(2) defeat commonality.  As noted above, detrimental reliance

7  is indisputably an element of a claim based on a misrepresentation

8  theory.  Plaintiffs should not be allowed to eschew proving the

9  causation element of their communications claim because they bring

10 this action on behalf of the Plan.  See Newton v. Merrill Lynch,

11 Pierce, Fenner, & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001) ("If

12 proof of the essential elements of the cause of action requires

13 individual treatment, then class certification is unsuitable.").  As

14 the court noted in Merck, "[i]nvestment decisions are highly

15 individualized, and thus the individual circumstances of the

16 plaintiffs markedly differ."  2009 WL 331426, at *6.  In order to

17 prove detrimental reliance, the Plaintiffs would have to establish

18 that each member of the proposed class relied on the Defendants'

19 alleged misrepresentation in making his or her decision to invest in

20 IGT stock.  See Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457

21 (11th Cir. 1996) (denying class certification in an ERISA case

22 because requirement that plaintiffs show that all members of the

23 class would have deferred their retirement had the misrepresentation

24 not been made defeated commonality); Brandt v. Grounds, 687 F.2d

25 895, 898 (7th Cir. 1982) (requiring proof of a causal connection

26 between breach of fiduciary duty and losses incurred).  Such proof

27

28                                    8

requires an individualized analysis and cannot be presumed from the behavior of the named Plaintiffs. This case will likely become a series of individualized analyses once some of the general issues in common have been resolved. "Judicial economy is not best served by using a class action in order to engage in such individualized analyses." Groussman v. Motorola, Inc., No. 10 C 911, 2011 WL 5554030, *4 (N.D.Ill. Nov. 15, 2011).

Further, the Court notes that a number of common issues have already been resolved in this case by the Court's March 16, 2011 order (#80) granting in part and denying in part Defendants' motion to dismiss (#40). There, the Court ruled on the nature and extent of each Defendant's fiduciary status, dismissed Plaintiffs' claim that Defendants failed to prudently and loyally manage plan assets, dismissed Plaintiffs' claim for breach of the duty of loyalty regarding alleged conflicts of interest, and held that Plaintiffs had standing to bring the instant action on behalf of the Plan in spite of the covenants not to sue each of them signed at the termination of their employment. The fact that these issues have already been resolved distinguishes this case from similar cases where certification was granted due to the much larger set of common issues, of which detrimental reliance was only one among many other issues or not an element of the asserted claims. See, e.g., In re Fremont Gen. Corp. Litig. v. Pension Benefit Guaranty Corp., 49 EBC 1829 (C.D.Cal. 2010); George v. Kraft Foods Global, Inc., 251 F.R.D. 338 (N.D.Ill. 2008); Kanawi, 254 F.R.D. 102.

1    Additionally, the other two remaining claims, the monitoring
2 claim and the co-fiduciary claim, are derivative of the
3 communications claims.  Harris, 2010 WL 744123, at *14 ("A claim for
4 breach of the fiduciary duty to monitor is derivative of other
5 claims.") (citing Computer Sciences, 635 F.Supp.2d at 1144); id. ("A
6 claim for co-fiduciary liability under ERISA requires sufficient
7 allegations of an underlying breach.") (citing In re Calpine Corp.,
8 No. C-03-1685 SBA, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31,
9 2005)).  For these reasons, the gravamen of what remains of
10 Plaintiffs' complaint is that Defendants misrepresented the
11 financial status of IGT.

12    Plaintiffs' argument that the Supreme Court's recent decision
13 in CIGNA Corp. v. Amara, 131 S.Ct. 1866 (2011), relieves them of
14 their burden of proving detrimental reliance as an element of their
15 communications claim is misplaced.  The Amara Court addressed the
16 need to show detrimental reliance with regard to the type of
17 equitable remedy sought pursuant to ERISA § 502(a)(3), which
18 authorizes "appropriate equitable relief" for violations of ERISA.
19 Id. at 1881.  After analyzing principles of the law of equity, the
20 Court affirmed that when a court exercises authority under §
21 502(a)(3) to impose a remedy equivalent to estoppel, a showing of
22 detrimental reliance must be made, but that such a showing may not
23 be necessary for other types of equitable relief such as surcharge
24 or reformation.  Id. at 1881-82.  The Court did not analyze whether
25 detrimental reliance is an element of a claim for misrepresentation
26 in violation of fiduciary duties arising under ERISA.  As noted
27
28                                    10

above, courts in this Circuit require detrimental reliance by a plaintiff as the causation element of a misrepresentation claim. Amara and Plaintiffs' arguments relying thereon are therefore completely beside the point.

Moreover, Plaintiffs are not entitled to a presumption of reliance.  Plaintiffs argue that they are entitled to the Affiliated Ute presumption of reliance where a securities fraud claim is based "primarily [on] a failure to disclose" because they have primarily alleged omissions.[1]  Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 154 (1972); see also Cartwright v. Viking Indus., Inc., No. 2:07-cv-02159-FCD-EFB, 2009 WL 2982887, at *14 (E.D. Cal. Sept. 14, 2009) (reliance is presumed "where the plaintiffs have primarily alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions.") (citing Binder v. Gillespie, 184 F.3d 1059, 1964 (9th Cir. 1999)).  The presumption therefore does not apply to "mixed claims" involving allegations of both affirmative misrepresentations and omissions unless the alleged omissions form the primary basis of the claim. Poulous v. Caesars World, Inc., 379 F.3d 654, 666 (9th Cir. 2004). While the Court agrees that detrimental reliance may be presumed where plaintiffs primarily allege omissions, that is not the case here.  It cannot be said that the thrust of Plaintiffs' allegations is that Defendants failed to disclose material information to Plan

---

[1] Plaintiffs do not dispute that they are not entitled to the fraud-on-the-market presumption adopted by the Supreme Court in securities fraud claims in Basic Inc. v. Levinson, 485 U.S. 224, 228, 241 (1988).

1  participants.  While Plaintiffs may attempt to style the alleged
2  misrepresentations as failures to disclose the truth of the IGT's
3  financial health, Plaintiffs primarily complain of inflated and
4  overly optimistic press releases and growth projections.  Plaintiffs
5  have presented a mixed claim and are therefore not entitled to the
6  Affiliated Ute presumption of reliance.

7      For these reasons, Plaintiffs have failed to establish
8  commonality as required by Rule 23(a)(2) and class certification
9  will be denied.

10             3. Typicality

11      The third requirement of Rule 23(a) is that a plaintiff must
12  show that the "claims or defenses of the representative parties are
13  typical of the claims or defenses of the class."  FED. R. CIV. P.
14  23(a)(3).  In examining typicality, courts consider "whether other
15  members have the same or similar injury, whether the action is based
16  on conduct which is not unique to the named plaintiffs, and whether
17  other class members have been injured by the same course of
18  conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.
19  1992).  This requirement serves to "assure that the interest of the
20  named representative aligns with the interests of the class."  Id.
21  (citing Weinberger v. Thornton, 114 F.R.D. 599, 603 (S.D.Cal. 1986).

22      The Court finds that the claims of the named plaintiffs are not
23  typical for two reasons.  First, each of the plaintiffs have
24  testified that they did not rely on the alleged misrepresentations
25  referred to in the amended complaint (#36) in making the decision to
26
27
28                              12

1  invest in IGT stock.[2]  Plaintiff Carr stated that he never read an
2  IGT SEC filing or press release in connection with investing in IGT
3  stock, nor could he otherwise identify any misleading statements.
4  (Carr Dep. at 37, 43, 46-47 (#117-B).)  Plaintiff Kimberly Jordan
5  testified that she does not know what the relevant SEC filings are,
6  cannot recall any IGT press releases, and that she did not take any
7  investment action based on any IGT press release within the last
8  five years.  (K. Jordan Dep. at 28, 31-32 (#117-C).)  Plaintiff
9  Randolph Jordan testified at deposition that he does not recall the
10 substance of any IGT SEC filing or press release.  (R. Jordan Dep.
11 at 20-23 (#117-D).)  Plaintiff Bennett cannot recall any statements
12 that he relied upon in deciding to invest in IGT stock, nor can he
13 recall any statements he found misleading.  (Bennett Dep. at 98
14 (#117-E).)  Furthermore, he does not recall ever reading an IGT SEC
15 filing or press release.  (Id. at 19-21.)  Because none of the named
16 Plaintiffs averred that they relied on the alleged
17 misrepresentations in choosing to invest in IGT stock, they have
18 rejected the gravamen of what remains of the class claims, rendering
19 their individual claims atypical.  See In re Bellsouth Corp., ERISA

20 _____

21     [2] The Court finds it necessary to clarify that Plaintiffs cannot
    now base their communications claim upon "Company-wide emails and
22  newsletters" (Pls.' Reply Memo. at 1 (#120)) when the complaint
    alleges that Defendants made misleading communications to Plan
23  participants via inaccurate SEC filings, press releases, and other
    specific communications with analysts and the press. (See Am. Compl.
24  ¶¶ 76, 87, 91-97, 103-06, 108-14, 119-21, 135-37, 143 (#36).)
    Moreover, the Court's previous order (#80) ruled that IGT and the
25  Committee were fiduciaries with regard to communications regarding the
    Plan only to the extent that Defendants converted the allegedly
26  inaccurate SEC filings, press releases, and other specific
    communications with analysts and the press into fiduciary
27  communications.

28                                    13

1  Litig., No. 1:02-CV-2440-JOF, 2005 U.S. Dist. LEXIS 46823, at *35

2  (Sept. 30, 2005) ("Because the Named Plaintiffs do not believe the

3  cornerstone argument of three of the counts raised in the complaint,

4  their claims cannot be typical or common of the putative class.");

5  see also Lewis v. Casey, 518 U.S. 343, 357 (1996) ("[N]amed

6  plaintiffs who represent a class must allege and show that they

7  personally have been injured."); Kenney, 754 F.Supp.2d at 292

8  ("Here, even if the plaintiff could show that some members of the

9  class did, in fact, rely on the misrepresentation, the claim fails

10 because there is no genuine issue of material fact about whether he

11 relied on it.  In fact, individual issues of reliance often present

12 a bar to class certification.") (citations omitted).

13      Second, all of the named Plaintiffs are former IGT employees

14 who signed releases in conjunction with their severance agreements

15 by which they expressly waived the right to bring any claims under

16 ERISA.  Previously, we denied (#80) Defendants' motion for summary

17 judgment (#44) wherein Defendants argued that Plaintiffs lacked

18 standing to bring their ERISA claims as a result of the releases.

19 We concluded that such individual releases could not bind the Plan

20 and therefore did not release Plaintiffs' claims brought on behalf

21 of the Plan.  See Bowles v. Reade, 198 F.3d 752, 759-60 (9th Cir.

22 1999).  The releases, therefore, do not preclude Plaintiffs from

23 bringing a claim on behalf of the plan.

24      In the context of a class action suit, however, Plaintiffs'

25 claims cannot said to be typical of class members who have not

26 signed releases and/or covenants not to sue.  See In re Bellsouth,

27

28                              14

2005 U.S. Dist. LEXIS 468233, at *38-39 ("It is true that such releases could not bind all plan participants. . . . But the Named Plaintiffs who signed such releases clearly cannot bring claims on behalf of the class with the same vigor and interest as someone who had not signed such releases."); see also In re Schering Plough Corp. ERISA Litig., 589 F.3d 585 (3d Cir. 2009) (concluding that even if a release does not bar an individual from bringing a § 502(a)(2) claim on behalf of the plan, it may preclude an individual from serving as a lead plaintiff and/or render her atypical of the class); Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 313 (5th Cir. 2007) (rejecting the plaintiffs' argument that similar releases were irrelevant to certification analysis because claims were brought on behalf of the plan).  Whether any of the other potential class members executed the same or similar releases, and the effect of those releases on their claims, are pivotal issues for each of the putative class members.  Further, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Baffa v. Donaldson, Lufkin, & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (citations omitted).  The court concludes that the named plaintiffs have not satisfied the typicality requirement because they are subject to unique defenses which threaten to become the focus of the litigation.

## 4. Adequacy

Rule 23(a)(4) requires evidence that "the representative parties will fairly and adequately protect the interests of the

15

1  class."  This element exists where (1) the named representatives
2  appear able to prosecute the action vigorously through qualified
3  counsel and (2) the representatives do not have antagonistic or
4  conflicting interests with the unnamed members of the class.
5  Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th
6  Cir. 1978).  In spite of Defendants' arguments to the contrary, the
7  Court finds that Plaintiffs have made a showing of adequacy
8  sufficient to satisfy Rule 23(a)(4).  Plaintiffs' execution of the
9  releases at issue does not generate a conflict of interest with
10 members of the class who have not signed releases.  Plaintiffs have
11 the incentive to maximize the recovery of the Plan because their
12 assets will be affected, regardless of the effect of the releases.
13 Defendants do not contest the qualifications of Plaintiffs' counsel.
14 Accordingly, Rule 23(a)(4) is satisfied.
15 **B. Rule 23(b)**
16      In addition to demonstrating each of the four prerequisites
17 under Rule 23(a), a plaintiff must also show that at least one
18 requirement of Rule 23(b) is met.  Zinser, 253 F.3d at 1186.
19 Plaintiffs assert that rule Rule 23(b)(1) or, in the alternative,
20 Rule 23(b)(3) is met.  For the reasons discussed below, Plaintiffs
21 have also failed to meet the requirements of Rule 23(b) and class
22 certification must be denied.
23           1. Rule 23(b)(1)(A)
24      Rule 23(b)(1)(A) allows for class certification where
25 "prosecuting separate actions by or against individual class members
26 would create a risk of: (A) inconsistent or varying adjudications
27
28                                16

1  with respect to individual class members that would establish

2  incompatible standards of conduct for the party opposing the class."

3  FED. R. CIV. P. 23(b)(1)(A).  For this reason, the Ninth Circuit has

4  held that class certification under Rule 23(b)(1)(A) is

5  inappropriate where plaintiffs primarily seek money damages.

6  Zinser, 253 F.3d at 1193-95 ("Rule 23(b)(1)(A) certification

7  requires more . . . than a risk that separate judgments would oblige

8  the opposing party to pay damages to some class members but not to

9  others or to pay them different amounts.") (internal quotation marks

10  and citation omitted); see also In re First Am. Corp. ERISA Litig.,

11  258 F.R.D. 610, 621-22 (C.D. Cal. 2009) (relying on Zinser to deny

12  class certification under Rule 23(b)(1)(A) where plaintiffs

13  primarily sought money damages for breaches of fiduciary duty under

14  ERISA); In re Syncor Erisa Litig., 227 F.R.D. 338, 346 (C.D. Cal.

15  2005) (same).  Here, Plaintiffs primarily seek money damages:

16  damages to the Plan and demands that Defendants make the Plan whole

17  are the primary focus of this action.  (See Am. Compl. at 69 (#36).)

18  Thus, certification is inappropriate under Rule 23(b)(1)(A).[3]

19          2. Rule 23(b)(1)(B)

20      In the alternative, Plaintiffs moves to certify the class under

21  Rule 23(b)(1)(B).  Rule 23(b)(1)(B) allows for class certifications

22  where:

23

24

25      [3] Although certification for a Rule 23(b)(1) class "may be
    appropriate even when monetary damages are involved," Molski v.
26  Gleich, 318 F.3d 937, 949 (9th Cir. 2003), Zinser is still controlling
    under Rule 23(b)(1)(A) where the plaintiffs "primarily" seek monetary
27  damages.

28                                    17

1
2
3
4

      prosecuting separate actions by or against individual
      class members would create a risk of: (B) adjudications
      with respect to individual class members that, as a
      practical matter, would be dispositive of the interests of
      the other members not parties to the individual
      adjudications or would substantially impair or impede
      their ability to protect their interest.

5   FED. R. CIV. P. 23(b)(1)(B).  The Supreme Court "counsel[s] against

6   adventurous application of Rule 23(b)(1)(B)."  Ortiz v. Fibreboard

7   Corp., 527 U.S. 815, 845 (1999).

8        Prior to the Supreme Court decision in LaRue v. DeWolff, Boberg

9   & Assocs., 552 U.S. 248 (2008), some courts had found similar class

10  certifications appropriate under Rule 23(b)(1)(B).  In re Fremont,

11  2010 WL 3168088, at *4 (listing cases).  Prior to LaRue, courts

12  granting certification of § 502(a)(2) claims reasoned that a

13  plaintiff who forced defendants to pay damages to a plan would alter

14  the interests of all other potential class members since § 502(a)(2)

15  claims could only be brought on behalf of a plan.  See, e.g., In re

16  Syncor, 227 F.R.D. at 347 ("If the primary relief is to the Plan as

17  a whole, then adjudications with respect to individual members of

18  the class would 'as a practical matter' alter the interests of other

19  members of the class.") (citation omitted).  However, LaRue

20  eliminated that risk by holding that participants in a defined

21  contribution plan, such as the Plan here, can bring ERISA §

22  502(a)(2) claims on behalf of their own individual accounts.  552

23  U.S. at 256.  Because putative class members now have an individual

24  remedy, they can pursue relief on their own behalf.  In re First

25  Am., 258 F.R.D. at 622.  "Moreover, under usual preclusion rules,

26  the defeat of an individual Plan participant's claim could not

27

28                                  18

1  adversely affect the individual claim of any other Plan

2  participant." Id. (citing Blonder-Tongue Labs., Inc. v. Univ. of

3  Ill. Found., 402 U.S. 313, 329-30 (1971)). Accordingly,

4  certification is not appropriate under Rule 23(b)(1)(B) because

5  individual adjudications of the matter would not be dispositive of

6  the interests of absent members in light of LaRue.

7       3. Rule 23(b)(3)

8       Rule 23(b)(3) provides for class certification where "the court

9  finds that the questions of law or fact common to class members

10  predominate over any questions affecting only individual members,

11  and that a class action is superior to other available methods for

12  fairly and efficiently adjudicating the controversy." FED. R. CIV.

13  P. 23(b). The matters pertinent to these findings include:

14       (A) the class members' interests in individually
         controlling the prosecution or defense of separate
15       actions; (B) the extent and nature of any litigation
         concerning the controversy already begun by or against
16       class members; (C) the desirability or undesirability of
         concentrating the litigation of the claims in the
17       particular forum; and (D) the likely difficulties in
         managing a class action.
18
     Id.
19
20       For the reasons set forth above with regard to the commonality

21  and typicality requirements of Rule 23(a), the Court finds that

22  certification under Rule 23(b)(3) is not appropriate as common

23  questions do not predominate. The fourth element of Plaintiffs'

24  misrepresentation claim, detrimental reliance by the plaintiff on

25  the misrepresentation, would require proof that each proposed class

26  member relied on the Defendants' alleged misrepresentations in

27  making the decision to invest in IGT stock. See Wiseman, 215 F.R.D.

28                                    19

1  at 510 (citing <u>Hudson</u>, 90 F.3d at 457).  Moreover, as noted above,

2  the Court has already resolved a number of common issues in our

3  previous order (#80), leaving primarily the misrepresentation claim

4  for adjudication.  As such, certification is not appropriate under

5  Rule 23(b)(3) because common issues will not predominate over

6  questions affecting only individual members.

7

8                          **IV. Conclusion**

9       Plaintiffs have failed to establish the commonality and

10  typicality requirements of Federal Rule of Civil Procedure 23(a)

11  because their misrepresentation claim, the main focus of the

12  litigation, will require individualized analysis of each putative

13  class member's detrimental reliance on the alleged

14  misrepresentations.  Moreover, Plaintiffs executed releases

15  explicitly waiving their right to bring suit under ERISA, rendering

16  their claims atypical of the putative class.  Plaintiffs have also

17  failed to meet the requirements of Rule 23(b) because they primarily

18  seek monetary damages, disposition of this case will not adversely

19  affect absent members in light of <u>LaRue</u> authorizing individual suits

20  under ERISA § 502(a)(2), and common questions will not predominate

21  the litigation.

22

23

24

25

26

27

28                                      20

1    **IT IS, THEREFORE, HEREBY ORDERED** that Plaintiff's Motion for

2  Class Certification and Related Relief (#106) is **DENIED**.

3

4

5

6  DATED: March 16, 2012.

7

8                                              UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                21